1

2

3

4                            UNITED STATES DISTRICT COURT

5                          NORTHERN DISTRICT OF CALIFORNIA

6

7    UNITED STATES,                          Case No. 24-cr-00044-AMO-1

             Plaintiff,
8
                                             **ORDER DENYING DEFENDANT'S**
9        v.                                  **MOTION TO SUPPRESS AND/OR**
                                             **DISMISS**
10   JOSHUA THOMPSON,
                                             Re: Dkt. No. 49
             Defendant.
11

12

13        Before the Court is Defendant Joshua Thompson's motion to suppress and/or dismiss.  The

14   Court heard the motion on February 24, 2025.  Having read the papers filed by the parties and

15   carefully considered their arguments therein and those made at the hearing, as well as the relevant

16   legal authority, the Court hereby **DENIES** Thompson's motions, for the following reasons.

17   **I.    BACKGROUND**

18        **A.    Underlying Felony**

19        On September 3, 2020, Thompson pleaded guilty to one count of being a felon in

20   possession of a firearm in violation of Title 18 U.S.C. § 922(g).  ECF 7-4 at 5.  On December 3,

21   2020, the Eastern District of California sentenced Thompson to 51 months custody followed by 36

22   months of supervised release.  ECF 7-2 at 2-3.  Thompson's term of supervision began on January

23   12, 2024.  ECF 7-1.  On January 24, 2024, the Eastern District transferred jurisdiction of

24   Thompson's supervised release to the Northern District of California.  *Id.*

25        **B.    Form 12 Charges**

26             **1.    Charges One and Two: Auto Burglary in Beverly Hills**

27        Six days after Thompson's supervision began, Beverly Hills Police ("BHPD") responded

28   to the scene of a vehicle burglary.  Harvey Decl., Ex. 1.  The victim reported that his friend's

United States District Court
Northern District of California

United States District Court
Northern District of California

1    vehicle had been broken into while parked and his backpack, containing his laptop, two watches,

2    oxygen readers, and work documents, was missing.  *Id.*, Ex. 1 at 6.  Through further investigation,

3    BHPD found that the burglary was captured on CCTV and revealed the suspect to be a 25-to-40-

4    year-old black male driving a white Mercedes-Benz with a CAL # 8RQL652 (the "Mercedes").

5    *Id.*  The CCTV footage shows the suspect using an unknown tool to break the window of the

6    victim's vehicle before grabbing the stolen property and placing it in the Mercedes.  Harvey Decl.,

7    Ex. 2 at 17.  The day after the burglary, BHPD placed a Department of Justice alert on the

8    Mercedes, indicating that it was a suspect vehicle used to commit a felony.  Harvey Decl., Ex. 2 at

9    24.

10        After Thompson was pulled over in the Mercedes, as set forth below, BHPD named

11   Thompson as the suspect in the auto burglary.  *Id.*  As such, probation filed a Form 12 alleging

12   that Thompson committed a new crime by burglarizing a vehicle in Beverly Hills (Charge One)

13   and left the Northern District without permission (Charge Two).  ECF 6.

### 2.    Charges Three and Four: Pittsburg Traffic Stop and Subsequent Discovery of Marijuana

16        On January 22, 2024, four days after the burglary in Beverly Hills, Pittsburg Police

17   ("PPD") Officer Jorge Melgoza was notified of a vehicle wanted for a felony crime (white 2006

18   Mercedes CAL # 8RQL652) that had come up via an Automated License Plate Reader ("ALPR")

19   in Pittsburg.  Harvey Decl., Ex. 2 at 4.  Because the Mercedes was wanted in connection with a

20   felony crime, Officer Melgoza performed a high-risk traffic stop.  Melgoza Decl. ¶ 2.

21        After Thompson's compliance with orders to exit the vehicle, an officer handcuffed him.

22   Leavitt Decl., Ex. D, Bodycam 2323 _ 8061G, Bates 3 at 4:50.  The officer then pat-searched him

23   and reached her hands into Thompson's front pants pockets. Leavitt Decl., Ex. E, Bodycam 2322

24   _8439D, Bates 1 at 5:10; *see also* Leavitt Decl., Ex. F, Vehicle 2327, Bates 19 at :40.  The police

25   detained Thompson in the rear seat of one of the police cars.  Leavitt Decl., Ex. E, Bates 1 at 6:15;

26   Leavitt Decl., Ex. G, Bodycam 2346 _ 8454C, Bates 11 at 1:00-1:50.  The police kept him

27   handcuffed for approximately 25 minutes.  *See* Leavitt Decl., Ex. B, Bates 2 at 4:45; Ex. E, Bates

28

United States District Court
Northern District of California

1   1. PPD searched Thompson's wallet and photographed his license.  Leavitt Decl., Ex. H, Bates 13

2   at 3:00-4:44.

3          While Mr. Thompson was handcuffed, the police performed a plain view protective search

4   of the Mercedes in order to clear it of any weapons or other individuals inside.  Melgoza Decl.

5   ¶¶ 4-5.  Officers confirmed the driver's identity as Joshua Thompson via his driver's license and

6   CAL Photo.  Harvey Decl., Ex. 2 at 4.  Officers also determined that Thompson was on federal

7   probation.  Melgoza Decl. ¶ 7.  Once Thompson was identified and photographed, officers

8   released him.  Harvey Decl., Ex. 2 at 4.

9          At BHPD's request, PPD towed and secured the Mercedes.  Harvey Decl., Ex. 2 at 4.  On

10  January 25, 2024, BHPD obtained a search warrant for the Mercedes.  *Id.* at 10-32.  That same

11  day, PPD officers executed the search warrant and uncovered 18.76 pounds of marijuana along

12  with evidence of sales in black garbage bags in the trunk of the Mercedes.  Harvey Decl., Ex. 2 at

13  7-8.  Based on the discovery, probation filed an amended Form 12 alleging that Thompson

14  unlawfully possessed a controlled substance (Charge Three) and committed a new crime by

15  possessing marijuana for sale (Charge Four).  *See* ECF 11.

16  **II.    DISCUSSION**

17         Thompson moves to dismiss the marijuana charges because the marijuana was mostly

18  destroyed except for a handful of samples.  *See* ECF 49 ("Mot.").  Thompson additionally moves

19  to suppress evidence uncovered as a result of the Pittsburg traffic stop, detention of Thompson,

20  and seizure of the Mercedes.  The Court takes up these two forms of relief in turn.

21         **A.    Motion to Dismiss**

22         Thompson argues that the Court should dismiss the marijuana violation because the police

23  deliberately destroyed most of the 18.76 pounds of marijuana found in the Mercedes.  *See* Mot. at

24  17.  The Government opposes dismissal on the basis that Thompson is not entitled to the full 18.76

25  pounds of marijuana in this proceeding because supervised release revocation hearings are not

26  criminal prosecutions.  Opp. at 16.  Rather, the Government argues that it satisfies both Criminal

27  Rule of Procedure 32.1 and due process so long as the Government produces those items that it

28  intends to use as evidence before a revocation proceeding.  Opp. at 17 (citing *United States v.*

1    *Donaghe*, 924 F.2d 940, 944 (9th Cir. 1990) (further citation omitted)).  Neither party provides

2    compelling authority regarding the bounds of the due process owed to Thompson in revocation

3    proceedings.  For purposes of this Order, the Court assumes that Thompson is entitled to due

4    process in this proceeding.  The Court accordingly assesses whether the destruction of the majority

5    of the marijuana found in the Mercedes violated Thompson's due process protections.

6          The due-process clause requires the government to preserve evidence "that might be

7    expected to play a significant role in the suspect's defense." *California v. Trombetta*, 467 U.S.

8    479, 488 (1984).  In order for destruction of evidence to rise to the level of a due process violation,

9    a defendant must make two showings: (i) "the government acted in bad faith, the presence or

10   absence of which turns on the government's knowledge of the apparent exculpatory value of the

11   evidence at the time it was lost or destroyed;" and (ii) "the missing evidence is of such a nature

12   that the defendant would be unable to obtain comparable evidence by other reasonably available

13   means." *United States v. Sivilla*, 714 F.3d 1168, 1172 (9th Cir. 2013) (internal quotation marks

14   omitted) (citing *Arizona v. Youngblood*, 488 U.S. 51, 56-57 (1988); *Trombetta*, 467 U.S. at 489;

15   *United States v. Cooper*, 983 F.2d 928, 931 (9th Cir. 1993)).  "For evidence to be materially

16   exculpatory, its exculpatory nature must be apparent." *Sivilla*, 714 F.3d at 1172 (citing *United*

17   *States v. Del Toro-Barboza*, 673 F.3d 1136, 1149 (9th Cir. 2012)).  Destruction of evidence

18   alternatively rises to a due process violation necessitating dismissal if the evidence destroyed is

19   "only potentially useful and not materially exculpatory," and the defendant shows the destruction

20   was committed in bad faith. *Sivilla*, 714 F.3d at 1172 (citing *Del Toro-Barboza*, 673 F.3d at

21   1149).

22         Thompson argued at the hearing that the marijuana was exculpatory, but because it has

23   been destroyed, "it is difficult, if not impossible, to conclude that it was materially exculpatory

24   evidence." *United States v. Myers*, No. 3:22-CR-00067-ART-CSD, 2024 WL 4518503, at *4 (D.

25   Nev. Oct. 17, 2024).  Moreover, Thompson implicates the alternative test where he argues that the

26   marijuana and its packaging were "potentially useful" to his defense. *See* Reply at 18.  The

27   analysis thus hinges on whether the government destroyed the evidence in bad faith. *See Sivilla*,

28   714 F.3d at 1172.  Thompson fails to identify any facts that tend to demonstrate that the

United States District Court
Northern District of California

4

1    Government's destruction of the marijuana was committed in bad faith.  *See Myers*, 2024 WL

2    4518503, at *5.  Indeed, at the hearing, Thompson's counsel expressly disclaimed any bad faith on

3    the part of the government in destroying the evidence.  Absent bad faith, destruction of potentially

4    useful evidence does not violate due process, and dismissal of the marijuana charges is

5    inappropriate.  *Cf. Sivilla*, 714 F.3d at 1172.  Therefore, the Court DENIES Thompson's motion to

6    dismiss.

7            **B.      Motion to Suppress**

8            Separate from the motion to dismiss, Thompson moves to suppress the evidence to be used

9    against him in the supervised release context.  *See generally* Mot. at 7-17.  The parties dispute the

10   availability and standard of review of suppression as a remedy for the purported Fourth

11   Amendment violations at issue.  "The general rule in criminal proceedings is that evidence

12   obtained in violation of a defendant's Fourth Amendment rights" must be suppressed or excluded

13   – such evidence "may not be introduced to prove the defendant's guilt."  *Martinez-Medina v.*

14   *Holder*, 673 F.3d 1029, 1033 (9th Cir. 2011) (citation omitted).  It is "well-established" that

15   "conditional releasees" are "not entitled to the full panoply of rights and protections possessed by

16   the general public" and in fact "enjoy severely constricted expectations of privacy relative to the

17   general citizenry."  *United States v. Kincade*, 379 F.3d 813, 833-34 (9th Cir. 2004) (en banc)

18   (citing Supreme Court cases); *see also United States v. Kriesel*, 508 F.3d 941, 950 (9th Cir. 2007)

19   (noting the "diminished privacy interests that may be advanced by a convicted felon currently

20   serving a term of supervised release").  Moreover, the Ninth Circuit has made clear that "the

21   exclusionary rule does not apply to supervised release revocation hearings."  *United States v.*

22   *Hebert*, 201 F.3d 1103, 1104 (9th Cir. 2000).

23          Thompson argues that, even in proceedings where, "as a general matter the exclusionary

24   rule does not apply[,] . . . evidence must be suppressed if it was obtained through an egregious

25   violation of the Fourth Amendment."  Mot. at 7 (quoting *Orhorhaghe v. I.N.S.*, 38 F.3d 488, 493

26

27

28

*United States District Court*
*Northern District of California*

5

1    (9th Cir. 1994)).[1]  The Government contends that the exclusionary rule of the Fourth Amendment

2    does not apply in this revocation proceeding because Thompson has a lesser expectation of

3    privacy while on supervised release.  Opp. at 3-5.  Because the marijuana Thompson seeks to

4    suppress was obtained pursuant to a search warrant on which the PPD relied on in good faith, the

5    Court concludes below that the exclusionary rule does not apply, and the Court need not resolve

6    the parties' dispute regarding the availability of suppression in the context of supervised release

7    proceedings.

8         The Fourth Amendment of the U.S. Constitution provides that "no Warrants shall issue,

9    but upon probable cause, supported by Oath or affirmation, and particularly describing the place to

10   be searched, and the persons or things to be seized."  U.S. Const. amend. IV.  Probable cause

11   exists when, under the totality of the circumstances, "there is a fair probability that contraband or

12   evidence of a crime will be found in a particular place."  *Illinois v. Gates*, 462 U.S. 213, 238

13   (1983).  Whether there is probable cause is a "commonsense practical question," and "[n]either

14   certainty nor a preponderance of the evidence is required."  *United States v. Kelley*, 482 F.3d

15   1047, 1050 (9th Cir. 2007) (internal quotation marks omitted).

16        When a warrant lacks probable cause, evidence seized during its execution should

17   generally be suppressed under the exclusionary rule.  *Mapp v. Ohio*, 367 U.S. 643, 655 (1961).

18   However, an exception to the exclusionary rule exists where an officer, in good faith, reasonably

19   relies on a defective search warrant.  *United States v. Underwood*, 725 F.3d 1076, 1085 (9th Cir.

20   2013).  But the good faith exception does not apply where an affidavit is " 'so lacking in indicia of

21   probable cause as to render official belief in its existence entirely unreasonable' " or "where the

22   warrant is 'so facially deficient – i.e., in failing to particularize the place to be searched or the

23   things to be seized – that the executing officers cannot reasonably presume it to be valid.' "  *Id.* at

24   1085 (quoting *United States v. Leon*, 468 U.S. 897, 923 (1984)).

25

26

27

28

United States District Court
Northern District of California

---

[1] A violation of the Fourth Amendment is not egregious unless "the agents committed the violations deliberately or by conduct a reasonable officer should have known would violate the Constitution."  *Orhorhaghe,* 38 F.3d at 493.

1    "A court evaluating the constitutionality of a search conducted pursuant to a search warrant

2    issued by a magistrate reviews the magistrate's probable cause determination for clear error."

3    *United States v. Nguyen*, 673 F.3d 1259, 1263 (9th Cir. 2012) (citation omitted).  On review, the

4    duty of the court "is simply to ensure that the magistrate had a substantial basis for . . .

5    conclud[ing] that probable cause existed."  *Gates*, 462 U.S. at 238-39 (internal quotations and

6    citation omitted; modifications in original).  If "the magistrate had a substantial basis for . . .

7    conclud[ing] that a search would uncover evidence of wrongdoing, the Fourth Amendment

8    requires no more."  *Id.* at 236 (internal quotations and citation omitted; modifications in original).

9    "[A] warrant issued by a magistrate normally suffices to establish that a law enforcement officer

10   has acted in good faith in conducting the search."  *Leon*, 468 U.S. at 922 (internal quotation marks

11   and citation omitted).  Reviewing courts pay "great deference" to the issuing judge's

12   determination of probable cause.  *Gates*, 462 U.S. at 236.  So long as the issuing judge had a

13   "substantial basis for concluding that a search would uncover evidence of wrongdoing," the

14   probable cause determination will be affirmed.  *Id.* at 236 (quoting *Jones v. United States*, 362

15   U.S. 257, 271 (1960)) (internal marks omitted).

16   In *Leon*, the Supreme Court held that evidence seized by police officers acting in good

17   faith pursuant to a facially valid warrant would be admissible even though the warrant was

18   subsequently found to lack probable cause.  *Id.*, 468 U.S. at 926; *accord Pearson v. Callahan*, 555

19   U.S. 223, 241-42 (2009).  *Leon* articulates four circumstances in which the good faith exception

20   does not apply on the ground that reliance is per se unreasonable:

21           (i) where an affiant misleads the issuing magistrate or judge by
             making a false statement or recklessly disregarding the truth in
22           making a statement; (ii) where the magistrate or judge wholly
             abandons her judicial role in approving the warrant, acting only as a
23           "rubber stamp" to the warrant application rather than as a neutral
             and detached official; (iii) where the warrant is facially deficient in
24           detail as to the place to be searched or the things to be found that the
             officers could not reasonably presume it to be valid; or (iv) where
25           the affidavit upon which the warrant is based is so lacking in indicia
             of probable cause that no reasonable officer could rely upon it in
26           good faith.

27   *United States v. Crews*, 502 F.3d 1130, 1136 (9th Cir. 2007) (citing *Leon*, 468 U.S. at 923-26).

28   This is not a case where the affiant presented false information to the issuing judge or where the

United States District Court
Northern District of California

1    warrant is "so lacking in indicia of probable cause" or "so facially deficient" that the executing

2    officers could not reasonably believe the warrant to be valid.  *See id.* (citation omitted).

3         Here, the affidavits supporting the search warrant Thompson challenges are not the type of

4    "bare bones" affidavits to which the good faith exception would not apply.  *Cf., e.g.*, *Underwood*,

5    725 F.3d at 1086 (finding good faith exception did not apply where affidavit contained no facts to

6    support a conclusion that defendant was a drug trafficker).  The application for a search warrant

7    was supported by a detailed search warrant affidavit from Detective Jonathan Aceves.  *See* Harvey

8    Decl., Ex. 2 (ECF 55-1 at 25-42).  Based on the submitted information, including the connection

9    between the Mercedes and the Beverly Hills vehicle burglary, Judge Stacy Wiese found probable

10   cause and issued the search warrant.  *Id.*, Ex. 2 (ECF 55-1 at 20-24).  The search warrant for the

11   Mercedes was not obviously deficient, and the PPD officers executing that warrant were entitled

12   to rely on the issuing judge's determination of probable cause.[2]  *Illinois v. Krull*, 480 U.S. 340,

13   349 (1987).  "Because the officer's sole responsibility after obtaining a warrant is to carry out the

14   search pursuant to it, applying the exclusionary rule in these circumstances could have no

15   deterrent effect on a future Fourth Amendment violation by the officer."  *Id.* at 349.  The Court

16   finds that there is no deficiency in the search warrant or supporting search warrant affidavit so

17   glaring that the officers could not reasonably rely on the warrant to conduct the search of the

18   Mercedes.  The Court thus ultimately finds that the officers who executed the warrant Thompson

19   attacks did so in good faith, and the Court DENIES the motion to suppress the evidence.

20   //

21   //

22   //

23   //

24   //

25

26

---

[2] Thompson argues that pictures taken of him and his driver's license during the traffic stop were
27   taken in violation of his Fourth Amendment rights, and that without those images the warrant was
improperly issued.  The Court finds that, even without these images, Detective Aceves's
28   declaration provided Judge Wiese substantial basis to conclude probable cause existed to issue a
search warrant for the Mercedes.  *See Gates*, 462 U.S. at 238-39.

United States District Court
Northern District of California

1   **III.    CONCLUSION**

2         For the foregoing reasons, the Court **DENIES** Thompson's motions.  The evidentiary

3   hearing will proceed on April 4, 2025.  *See* ECF 51.

4

5         **IT IS SO ORDERED.**

6   Dated: March 5, 2025

7

8   _____

9   **ARACELI MARTÍNEZ-OLGUÍN**
    **United States District Judge**

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28