UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>　　　　Plaintiff,<br>　v.<br>JOSHUA THOMPSON,<br>　　　　Defendant. | Case No. 24-cr-00044-AMO-1<br><br>**ORDER RE SUPERVISED RELEASE VIOLATION**<br><br>Dkt. No. 80 |

Before the Court is an amended petition for warrant for person under supervision. On April 8, 2025, the parties appeared before the Court for an evidentiary hearing to determine whether, as alleged, Defendant Joshua Wayne Thompson violated his conditions of supervised release by (1) committing a burglary from an auto on January 18, 2024; (2) leaving the Northern District of California and committing the alleged burglary from an auto in Beverly Hills, California, on January 18, 2024; (3) possessed approximately 18.76 pounds of marijuana on January 22, 2024; (4) possessed the approximately 18.76 pounds of marijuana for sale on the same date; (5) tested positive for use of controlled substances in March 2024; (6) failing to abide by the condition of home detention by violating curfew without authorization on certain dates in October 2024; and (7) again leaving the Northern District of California without prior authorization on September 15, 2024. *See* Dkt. No. 80 (Amended Petition for Warrant for Person Under Supervision). The Court granted Thompson's request to sever the eighth charge of the petition from the hearing. Dkt. No. 96.

At the hearing, the Government presented testimony from Officer Jorge Melgoza, Detective Erica Leferov, Tatiyana Abarro, and Deputy Probation Officer Matthew Coppage. Thompson cross-examined all witnesses and additionally presented testimony from an expert,

Kenton Wong, who was cross-examined by the Government. Thompson objected to the Court considering hearsay evidence, and the Court noted Thompson's continuing objection would be resolved following further briefing on the admissibility of hearsay testimony in the supervised release violation context as set forth in *United States v. Comito*, 177 F.3d 1166, 1170 (9th Cir. 1999). The parties submitted post-hearing briefing on the admissibility of the testimony and certain evidence. *See* Dkt. Nos. 102, 106, 107. The Court now issues this written Order to address the hearsay objection and rule on charges one through seven of the March 24, 2025 petition. This Order assumes familiarity with the facts underlying the petition and only recounts them to the extent necessary within its analysis.

**I.  DISCUSSION**

   **A.  Applicable Legal Standards**

A district court may revoke of a term of supervised release or probation only if it " 'finds by a preponderance of the evidence that the defendant violated a condition of supervised release.' " *United States v. Perez*, 526 F.3d 543, 547 (2008) (citing 18 U.S.C. § 3583(e)(3) and *Morrissey v. Brewer*, 408 U.S. 471, 484 (1972)). Although this is a lower standard than that required for a criminal conviction, there must still be credible evidence that the defendant actually violated the terms of his supervised release or probation. *Perez*, 526 F.3d at 547.

Federal Rule of Evidence 1101(d)(3) specifies that the Federal Rules of Evidence do not apply in revocation of probation proceedings. As parole, probation, and supervised release revocation hearings are "constitutionally indistinguishable and are analyzed in the same manner," the Federal Rules of Evidence do not apply in proceedings related to the revoking of supervised release. *United States v. Hall*, 419 F.3d 980, 985 (9th Cir. 2005); *see United States v. Comito*, 177 F.3d 1166, 1170 (9th Cir. 1999) (noting that the Supreme Court and the Federal Rules of Criminal Procedure have extended the same due process rights to all three types of revocation proceedings); *see also United States v. Walker*, 117 F.3d 417, 421 (9th Cir. 1997) (holding "that the Federal Rules of Evidence do not apply to proceedings to revoke supervised release.").

Though the Federal Rules of Evidence do not apply, a defendant facing a supervised release violation charge maintains a due process right to confrontation under the Constitution. *See*

*Walker*, 117 F.3d at 420. Consequently, hearsay evidence is only admissible if a releasee's interest in his right to confrontation exceeds the government's good cause for denying it. *Comito*, 177 F.3d at 1170. As recounted in *Walker*:

> The defendant's right to confrontation is weighed under the specific circumstances presented. In conducting the balancing test, the trial court may consider the importance of the evidence to the court's finding, the releasee's opportunity to refute the evidence, and the consequences of the court's finding. The trial court might also consider the difficulty and expense of procuring witnesses and the traditional indicia of reliability borne by the evidence.

*Walker*, 117 F.3d at 420. The "significance of the releasee's interest in confrontation" is assessed with reference to "two primary factors:" (1) "the importance of the hearsay evidence to the court's ultimate finding" in the revocation proceedings and (2) "the nature of the facts to be proven by the hearsay." *See United States v. Hall*, 419 F.3d 980, 987 (9th Cir. 2005) (citing *Comito*, 177 F.3d at 1170). A releasee's interest in confrontation may be "lessened" if the out-of-court statements "bear indicia of reliability," such as the consistency of the testimony or corroboration by other evidence. *Hall*, 419 F.3d at 988. And, although the Federal Rules of Evidence do not apply in revocation proceedings, statements that fall within "long-standing exceptions to the hearsay rule . . . satisfy the lesser standard of due process" in such proceedings. *Id.* at 987.

### B. Charges One and Two

In charges one and two, Probation alleges that on January 18, 2024, Thompson violated the terms of his supervised release by (1) committing a vehicle burglary in Beverly Hills, California, and (2) leaving the Northern District of California. Dkt. No. 80 at 3. Both of these charges rely on a video, two images, and Officer Coppage's description of interactions he had with the Beverly Hills Police Department ("BHPD").

The Government emphasizes that the video and images sourced from BHPD do not fit the definition of hearsay. *See* Opp. at 5-6 (citing, e.g., *United States v. Lizarraga-Tirado*, 789 F.3d 1107, 1109 (9th Cir. 2015)). The Court agrees and accordingly declines to apply the *Comito* balancing test to Exhibits 1, 2, and 3, the video and images proffered by the Government at the evidentiary hearing. Though they are not hearsay, the Court finds these exhibits unhelpful to prove charges one and two by a preponderance of evidence. The image quality on all of them is

poor and grainy, leaving the Court unable to readily identify Thompson as the person depicted. The only remaining evidence contributing to a finding that the video and images depict Thompson is the identification of Thompson by Officer Coppage.

Officer Coppage's identifying testimony does not establish a violation by a preponderance of evidence. Significantly, Officer Coppage's identification of Thompson "by his facial structure, his walk, [and] the way he wears his hat" is not convincing and not borne out in the content of the video or images, which do not clearly portray such nuances. Hrg. Tr. at 118; *see also id.* at 132-33. Further, Officer Coppage's identification of Thompson in the video and images is undermined by his own testimony. Officer Coppage stated that he recognized Thompson in the video and images because the individual depicted wore a "popular" "Nike track jacket." Hrg. Tr. at 137. But such popularity and admitted lack of uniqueness undercuts the officer's ability to discern the person depicted as his supervisee. *See* Hrg. Tr. at 137-38; *see also* Ex. 130. Officer Coppage's observations of the video and images therefore cannot stand on their own to prove charges one and two, and the Court must turn to analyze the remaining source of Officer Coppage's identification of Thompson – statements made to him by BHPD Detective Aceves.

Officer Coppage testified repeatedly about statements made to him by non-testifying Detective Aceves. For example, Officer Coppage testified that Detective Aceves "contacted me regarding Joshua Thompson in a vehicle break-in down in Beverly Hills, California." Hrg. Tr. at 113. He testified that Detective Aceves informed him that the Beverly Hills vehicle break-in "was captured on surveillance video." Hrg. Tr. at 113. He testified that Detective Aceves sent him "a screenshot of the video showing Mr. Thompson." Hrg. Tr. at 113-14; *see also id.* at 115 (agreeing "that the detective from Beverly Hills sent you a screenshot of the individual that we see in that footage."). Indeed, Officer Coppage agreed that his initial identification of Thompson from the images of the Beverly Hills vehicle break-in was based on Detective Aceves's prior identification of Thompson as the suspect – "the important thing is the officer already knew who he was and they were confirming with me." Hrg. Tr. 135; *see also id.* at 131 (BHPD made clear to Officer Coppage that "[t]hey already suspect Mr. Thompson is the person who is in the picture they sen[t] you."). By his own admission, Officer Coppage's testimony on the crucial issue of identification

4

thus was based on out-of-court statements made to him by Detective Aceves, a witness who the Government did not present at the hearing. Detective Aceves's identification of Thompson as the suspect depicted in the video and images accordingly constitutes hearsay, and the admissibility of Detective Aceves's identification of Thompson must be subjected to the *Comito* balancing test.

Here, Thompson has at least a moderate interest in confronting Detective Aceves because the hearsay statements identifying him in the video and images are "important to the finding of the violation," including, foundationally, Thompson's presence in Beverly Hills, far from the Northern District. *Comito*, 177 F.3d at 1171. The Government presented no evidence supporting good cause for Detective Aceves's absence from the evidentiary hearing. As in *United States v. Akbar*, the Government "did not issue a subpoena, nor did it try to contact the witness or otherwise procure [their] appearance," undermining any basis to find good cause to merit consideration of hearsay statements in support of the violation. *Id.*, No. 23-671, 2024 WL 3898625, at *1 (9th Cir. Aug. 22, 2024) (reversing supervised release determination). Weighing, on one hand, Thompson's interest in confronting the person who originally identified him in the video against, on the other hand, the Government's failure to procure the witness, the Court finds that due process requires excluding Detective Aceves's identification.

In sum, having found Exhibits 1, 2, and 3 too grainy to establish a positive identification of Thompson on their own, having found Officer Coppage's testimony unpersuasive to plausibly establish he could identify Thompson in the exhibits, and having found that Detective Aceves's statements identifying Thompson in the exhibits must be excluded to comport with due process, the Court concludes that the Government fails to meet its burden. The Court does not find sufficient evidence to prove by a preponderance of evidence that Thompson was present in Beverly Hills on January 18, 2024, and it accordingly cannot conclude that Thompson committed the alleged auto burglary in Beverly Hills on the same date. The Government did not bear its burden as to charges one and two.

### C. Charges Three and Four

In charges three and four, Probation alleges that on January 22, 2024, Thompson not only (3) possessed approximately 18.76 pounds of marijuana, but further, he (4) possessed the

5

approximately 18.76 pounds of marijuana for sale. The basis of charge three, for possession of a controlled substance, is the condition of Thompson's supervised release that he not unlawfully possess a controlled substance. The basis of charge four is the mandatory condition that Thompson not commit another federal, state or local crime, and here, Probation alleges violations of California Health and Safety Code 11359(b), Possession of Marijuana for Sale, a felony; California Health and Safety Code 11360(a), Give/Sell/Transport Marijuana, a felony, and Title 21 U.S.C. § 841(a)(1) Possession with Intent to Distribute, a felony. *See* Dkt. No. 80 at 4. In support of these charges, the Government presented testimony from Pittsburg Police Officer Jorge Melgoza, Pittsburg Police Detective Erica Lefterov, and Contra Costa County criminalist Tatiyana Abarro. These charges do not involve the same challenge to hearsay involved in the preceding discussion.

Possession of a controlled substance can be established by showing either actual or constructive possession. *United States v. Grayson*, 597 F.2d 1225, 1229 (9th Cir. 1979). The Government can show constructive possession by presenting evidence "showing ownership, dominion, or control over the contraband itself or the premises or vehicle in which contraband is concealed." *United States v. Shirley*, 884 F.2d 1130, 1134 (9th Cir. 1989) (internal quotation marks omitted); *see also United States v. Gordiano-Vergara*, 188 F. App'x 623, 626 (9th Cir. 2006). "Constructive possession may be established by direct or circumstantial evidence that the defendant had the power to dispose of the drug, the ability to produce the drug, or that the defendant had the exclusive control or dominion over property on which contraband narcotics are found." *United States v. Duenas*, 691 F.3d 1070, 1084 (9th Cir. 2012) (citation and internal quotation marks omitted). More particularly, "[t]o establish the federal felony offense of possession with intent to distribute marijuana under 21 U.S.C. § 841(a)(1), the government must show that [the defendant] (1) knowingly; (2) possessed marijuana; (3) with the intent to distribute it." *United States v. Jackson*, 225 F.3d 664 (9th Cir. 2000) (citing *United States v. Innie*, 7 F.3d 840, 844 (9th Cir. 1993)). "Intent to distribute may also be inferred from the presence of packaging materials." *Innie*, 7 F.3d at 844.

6

1    Officer Melgoza testified about coming upon the white Mercedes driven by Thompson and
2    identifying Thompson in the course of the January 22, 2024 traffic stop.  Hrg. Tr. at 19-21.
3    Thompson was alone in the vehicle at the time of the traffic stop, and he had exclusive dominion
4    and control over the vehicle as well as its contents.  *Id.*  Officer Melgoza testified further about
5    having the vehicle towed and stored in the Pittsburg Police Department lot.  *Id.*  Detective
6    Lefterov testified about her search of the white Mercedes pursuant to a search warrant on January
7    25, 2024.  *Id.* at 32-44.  Detective Lefterov described how she found the large bags containing
8    18.76 pounds of suspected marijuana in the vehicle, along with a grinder and smaller plastic bags,
9    all of which suggested to her that the significant volume of marijuana was possessed for
10   transportation and sale.  *Id.* at 40-41.  Detective Lefterov further recounted how she conducted a
11   presumptive test of the suspected marijuana to confirm the presence of THC and that she then sent
12   six samples totaling 3.16 grams out of the 18.76 pounds to the crime lab.  *Id.* at 46-50.  Abarro
13   testified that she subjected the sample provided her by Detective Lefterov to presumptive and
14   confirmatory tests and concluded that the organic material was marijuana.  *See id.* at 91-93.  Based
15   on the sum of the testimony, including the marijuana's presence in the vehicle possessed and
16   operated by Thompson, the Court finds by a preponderance of evidence that Thompson unlawfully
17   possessed a controlled substance and violated the terms of his supervised release.
18   Thompson repeatedly sought to reframe the full volume of marijuana as "trimmings and
19   leaves and stems" to suggest that the full amount of the 18.76 pounds of plant matter discovered
20   was not marijuana for sale.  Hrg. Tr. at 61.  To this end, Thompson presented an expert witness
21   who testified that Lefterov's evidence gathering and Abarro's testing protocol in the crime lab fell
22   short of the standard he would have employed, leaving room open for speculation regarding the
23   THC contents of the untested mass of marijuana.  *See id.* at 175-176.  Despite this testimony
24   regarding investigators' testing methods, the Court finds that the Government has met its burden
25   to establish charges three and four by a preponderance of evidence.  The mass of marijuana,
26   combined with the grinder and additional bags, and as informed by Detective Lefterov's training
27   and experience, establishes that Thompson possessed the controlled substance with intent to sell or
28   distribute.  *See* Hrg. Tr. at 41, 65.

7

**D.     Charges Five, Six, and Seven**

In charge five, Probation alleges that Thompson used a controlled substance. Thompson's March 19, 2024 urinalysis test returned positive results for the presence of "Oxy and THC." Dkt. No. 80 at 4. At the evidentiary hearing, the Government presented laboratory reports demonstrating that Thompson's urine tested positive for cannabinoids or THC as well as Oxycodone. *See* Exs. 5 & 6; *see also* Hrg. Tr. at 120-21.

In charge six, Probation alleges that Thompson violated the term of his supervised release that he remain subject to home detention. Probation's location monitoring tools showed Thompson outside of his home without authorization on several instances on each day between October 22, 2024, and October 26, 2024. *See* Dkt. No. 80 at 5-6. The Government presented evidence of these several instances at the evidentiary hearing, including through the testimony of Officer Coppage. Hrg. Tr. at 124-28.

In charge seven, Probation alleges that Thompson violated the term of his supervised release that he not knowingly leave the Northern District without prior authorization from the Court or the Probation Officer. Probation's location monitoring tools showed Thompson left the District to pick up his child in Fairfield, California, in the Eastern District, on September 15, 2024. Dkt. No. 80 at 6. The Government presented evidence of this departure from the District at the evidentiary hearing, including through the testimony of Officer Coppage. Hrg. Tr. at 128-29. The Court finds that the Government presented sufficient evidence to prove these charges five, six, and seven by a preponderance of evidence.

**II.    CONCLUSION**

The Court finds the Government failed to establish by a preponderance of evidence that Thompson was present in Beverly Hills or that he committed the alleged vehicle burglary. The Court finds the Government established by a preponderance of evidence that Thompson violated the terms of his supervised release as to charges three through seven.

//

//

//

The Court **SETS** a disposition hearing for 11:00 a.m. on Wednesday, October 8, 2025, at the Oakland Courthouse.  Any disposition memoranda shall be submitted by no later than noon on October 1, 2025.

**IT IS SO ORDERED.**

Dated: September 25, 2025

**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**